Good morning. May it please the Court, I am Vernon Nelson. I represent the appellant, Mr. Cutts, in this case. And I would request to reserve three minutes for rebuttal. Please watch the clock. Okay, thank you. The question in this appeal is whether appellant's right to assert claims under the FDCPA were barred by his failure to assert claims under the FDCPA in the underlying state court action where he did not appear and judgment was entered by default. In resolving this issue, the appellant submits that the Court must determine whether the FDCPA claim arose out of the same transaction and occurrence. Let me ask you this. The Nevada court has not addressed this issue. The state court has not addressed this issue. Isn't that correct? Correct. And, in fact, the Ninth Circuit hasn't directly addressed it either. I'm wondering if this is a question that we should certify to the Nevada Supreme Court to get the court's ruling, since it's a question of state law. What's your take on that? I would suggest, Your Honor, that that is not necessary. And I would suggest that the proper argument here is the following Eighth Circuit's guidance in Peterson. Well, the circuit courts are split on this, right? The Fifth Circuit in plant went the other way. And Nevada has said we read transaction or occurrence very broadly, which is closer to what the Fifth Circuit said. So how do we know how the Nevada state court would rule on this issue? I don't think we would know that without certifying it. I think you're correct. However, I think even if it were read to preclude a plaintiff from bringing an FDCPA claim in Federal court under the principles that were followed in Arellano, I think that those principles could be set aside, because, you know, this is a broad Federal scheme, and the appellant is, you know, I understand, resubmit under Federal law entitled to have a FDCPA claim heard in Federal court. Your client had the ability to have their FDCPA claim heard. It isn't like Arellano where the creditor's actions to buy up the cause of action foreclosed the claimant from pursuing that claim. The problem was the timing. So similar to had your client missed this edge of limitations, your client would have been precluded. So I don't see why Arellano is on point. Maybe you can explain that. The points that were raised in Arellano were is there the state law an obstacle to right to sue in Federal court? Well, your client had the opportunity to pursue the FDCPA claim. He just had it raised at the right time, which is when the, you know, assuming that that we conclude that Nevada would follow the very broad reading that it said in its cases and then followed the plant line. However, Your Honor, I'm not aware how he would have been able to pursue that claim in Federal court. He would have had to bring it as a counterclaim in State court. Well, what says he, but he could pursue the claim. It doesn't matter whether it's State court or Federal court, right? The State court could hear that claim. I'm not sure. The State court could hear it. Yeah. But when there's concurrent jurisdiction, you know, we submit that he would have the right to have it heard in Federal court where these matters are heard more often and, you know, the courts are better equipped to implement the Federal scheme. Well, that's a policy consideration that the circuits that went in the direction that you're urging considered, but I don't think it's a legal requirement or is it in your view, is there some legal right to have your FDCPA claim heard in Federal court? I submit that the, you know, the, and I watched the arguments again last night preparing for this. The arguments and the, you know, that were made in the Arellano case go exactly to that, that the person has a right to have their claim heard in Federal court. Now, I don't know that Arellano expressly says that, but I think it could be certainly interpreted that way, and that's how we submit. So the other part I would like to bring to your attention too is this was dismissed with prejudice while there was a motion to amend pending. And we had conducted discovery while this motion to dismiss was pending and were prepared to assert new claims, and we were never provided with a chance to amend our complaint. Can you tell us why your amendment would have led to claims that weren't futile? The amendment wouldn't have been futile, especially as to the FDCPA. These were issues that were related to the execution proceedings that took place after the underlying judgment. So, you know, for example, there was a they continued to credit report for a long for, you know, for a period of time afterwards that that was not proper. Even with the amendment, why wouldn't the misrepresentation in civil conspiracy claims be barred by claim preclusion? I'm sorry. Can you repeat that? Even if you were allowed to amend the complaint, why wouldn't the judge have been correct in that the misrepresentation claim and the civil conspiracy claim were barred by claim preclusion? I'm not saying they may have been. They may have been. I didn't go through that particular analysis. I was focusing on that we found, you know, actions that occurred after the activities are supposedly precluded that would give rise to a separate cause. You know, these are actions that happened afterwards. There's no way they could have been litigated in a prior proceeding. And if I understand you, what you're saying is had you been able to amend, you may have been able to allege some things that occurred after regarding fair debt collection, but you're not alleging that you would have been able to do something that stopped the claim preclusion for misrepresentation and civil conspiracy. Correct. All right. Thank you. So I'm at 320, so I'll leave it there and save the rebuttal. All right. Save that for rebuttal. Thank you. Good morning, Your Honors. Good morning, Judge Gould. My name is Chad Clement. May it please the Court, on behalf of Richland Holdings, Inc., who does business as Account Corp. of Southern Nevada, and on behalf of Dr. Mullen, who does business as the Ziba Sleep Center. The Court should affirm the district court's dismissal of Mr. Cutts' complaint because the district court properly concluded that Mr. Cutts' claims were logically related to the claims in the underlying State court case. Well, let me ask you the same question I asked your opposing counsel, that Nevada hasn't ruled on this directly, and there's a split in the circuits that are interpreting Federal Rule of Civil Procedure 13, which is the same language. And we, the Ninth Circuit, hasn't directly ruled either. So why shouldn't we certify this to the Nevada Supreme Court to find out how it interprets its own Rule 13? It's interesting you raise that. In preparing for this, I thought that might be one of your questions and a possible outcome. I'm not opposed to it. I think you could. I think the question is, is it necessary? And I don't think it is. I think that there is enough Nevada precedent on the test to be employed on what constitutes a compulsory counterclaim. And I think under those tests, you could still apply those to this scenario and to these allegations and this complaint and reach a proper conclusion. But I'm not opposed to it, and I think you could do that. I think what is particularly dispositive of this case and the way I read kind of the split in some of the circuits and some of the district court cases is a lot of these cases seem to fall on specific allegations or specific facts in the cases in terms of the factual background of what was or wasn't a transactional occurrence. And what I think is dispositive in this case is that when you look at the allegations of the complaint, all of them stem from fundamentally whether the contract between Dr. Moland and Mr. Cutts authorized a collection fee. That's the basis of the FDCPA claim. It's the basis of the misrepresentation claim. It's the basis of the abuse of process claim. That was the very contract that Account Corp sued on in state court to collect the debt. And so that was the fundamental issue, whether or not that contract authorized it. Of course, the state court concluded that it did because Account Corp obtained a default judgment. So a lot of the different cases that I've read, that I've seen, deal with more with methods of collection type issues, 20 phone calls a day, something like that that happens after the underlying debt was incurred, and so there's an argument that it wasn't the same transactional occurrence. This isn't one of those cases. The claims, Mr. Cutts' claims, all are based upon that one fundamental issue of whether the contract between the two authorized the collection fee. Well, they do raise a procedural claim about the validation letter, which is a separate right that's given by FDCPA. True. And I admit that's probably my weakest point there. Although what's not entirely clear about the validation of debt letter claim is whether they're just simply saying it wasn't sent or whether they're saying there was something improper about the letter because the collection fee was added and would have been put as part of the debt in that letter. To the extent that that's the claim, then it goes back to that fundamental issue of what the contract authorized. And I would submit that that would be the same transactional occurrence because it was the very issue in front of the state court. Let me ask you about the abuse of process claim. I mean, Nevada has, the Nevada Supreme Court has spoken on that and says it's not a compulsory counterclaim in executive management. What do we do about that? Yep. I admit that's another weak point, something I've got to get around. I think a couple of things. I think first, I don't read executive management to make a broad blanket holding that it can never be a compulsory counterclaim. That case was fairly fact specific, somewhat complicated, and the way I read it is that in that case, because it was a title issue, there was a Liz Pendens after the complaint was brought that was put on the property that prevented subsequent sales. So my read of the case is that it was kind of like an after acquired claim, and that's why the Nevada Supreme Court said it wasn't compulsory because it would have accrued later. Now, the analysis isn't the best, but I think that's why it's distinguishable. And again, I go back to the facts in this case, which is that the very issue that's present in all of Mr. Kutz's claims except perhaps the validation of debt letter claim is whether or not the contract authorized that fee. So it all goes to that court issue, and that's the precise issue that was in front of the state court. It sounds, then, as if you'd at least concede that the Fair Debt Collection Practices Act, at least as to the validation debt letter claim piece of it, should go back to the trial court. I'm not conceding that. I'm conceding of all the claims it's my weakest point. I think what I'm saying is that depending upon the nature of the claim, and it's not clear from the complaint, it just says it wasn't in compliance. Does that mean because it added a fee that wasn't authorized or because it just wasn't sent? And you've heard that Mr. Nelson's more than happy to amend the complaint to clarify that. Right. And to that point, by the way, there's no motion to amend pending, and there isn't one in the record. There never was one. But I think, to Judge Ikuda's point, Nevada has a very broad and liberal read of transaction occurrence and compulsory counterclaims. So my position would be on the validation of debt letter if the claim is that it wasn't sent. In order for that obligation to be triggered, you have to have a communication between the consumer and the debt collector. There's no communication. There's no obligation to send that letter. Presumably, if that's the claim, the communication occurred, in which case that would have occurred before the state court complaint was filed. And I think that under Nevada's precedent, which is really quite robust, that that in connection with the fact that that debt was being litigated arising out of the contract, I think the Nevada Supreme Court would say that it arose out of the same transaction occurrence and was, therefore, a compulsory counterclaim barred by claim preclusion. To the extent that it's not in compliance simply because the debt was added to the or the collection fee was added to the letter, my position would be that's even better for me because, again, it goes back to the issue of was it authorized under the contract, which is the contract that was being sued upon in the state court. So those are my two points to those two issues. I think I've kind of covered here what I want to say. The only other points I would make is that, you know, there were other alternative grounds to affirm the dismissal, and one of which was that the claims truly fell to state claims upon which relief can be granted. Now, the court didn't reach that, but if the court somehow disagreed with me and the district court on the claim preclusion and compulsory counterclaim issue, I do think all of those fell to state claims. Dr. Mullen, for example, on the FDCPA claim is a creditor. It's expressly pled that he's a creditor. He's not a debt collector. I don't think that there's any way that the FDCPA applies to him. To the abusive process claim, the Nevada Supreme Court has directly held, we cited this in the Land Baron case, that simply filing a complaint, however the malicious intent might be, and, of course, it wasn't here, can never constitute an abusive process as a matter of law. You have to have some malicious or pervert act after that, and there's nothing alleged here in this case that would amount to that. The abusive process claim, there were two events that essentially happened in the state court case. We filed a complaint and applied for default judgment. Those are regular and proper in the course of any proceeding. And so I think under Nevada Supreme Court precedent, as a matter of law, based upon the allegations and the complaint, seeking a fee that they claim was unauthorized, which, of course, was authorized by the district court, could never amount to an abusive process. The deceptive trade practices claim, I understand from the opening brief, has been abandoned, so I won't address that. And then I think the last two remaining claims are the misrepresentation claim and the conspiracy claim, and we raised on the misrepresentation claim that there's some allegations that the district court was misled and we raised a lack of standing argument to that. And because this was a default judgment scenario, I don't think Mr. Cutts can claim that he justifiably relied upon a submission to the court. And as to the last claim, civil conspiracy, those allegations were just kind of rote, formulaic conclusions with no factual enhancement that would make those claims plausible. Unless the court has any questions, I'll wrap up my remarks. All right. Thank you. Thank you. Thank you. Just a few points in rebuttal. I'm sorry I did not address it in my opening about 1692G, but in this matter, there were two different, the validation letter had a different amount in it than was the actual amount that was sued for. Okay. And that was at the addition of the collection fee or some other issue? There were different collection fees added. So the amount that's in the 1692G letter is not the amount that's set forth in the complaint. Okay. Okay. And Mr. Cutts denies that he ever received the letter. And there's been no, you know, there's no evidence provided that reaches, you know, the standard of what you have to show, you know, because the burden would be on the defendants to show that it was sent. And none of that, they have not provided that sort of evidence to show that it's been sent. I can't remember the case off the top of my head. But there's a very clear Ninth Circuit case that describes what has to be done to show that it was sent, the procedures that were followed. And none of that evidence has been presented. We were never given an opportunity to get into that. Because the district court dismissed. Correct. Correct. And then also on the, as you said, on the abuse of process claim, we've had several, this is probably one of four or five cases involving the same defendant that our firm has handled. And several, a couple of those cases have been before Judge Gordon, and Judge Gordon summarily came out and said compulsory counterclaims are not, I'm sorry, the use of process is not a compulsory counterclaim. So I guess if I understood opposing counsel, he's saying that the dismissal was proper on other grounds and that you didn't plead elements of abuse of process. Correct. There have been, so we pled the same, essentially same exact form of complaint in another case in front of Judge Navarro and it involved execution issues. And she said that she denied the motion to dismiss on that matter. And in both cases in front of Judge Gordon, he granted us leave to amend to modify that. And based on what we've discovered in these different cases, and I'm sorry if I'm going off the record, but there's, you know, we've come off with ulterior motives as to why the collection fees are used and why they want to sue these cases, because they make more money when they sue these cases than they do if they settle them. My time is up. Thank you. Okay. We thank both parties for their argument. In the case of Michael Guts v. Richland Holdings and Clifford Moland is submitted.
judges: Gould, Ikuta, Pearson